STARKWEATHER & SHEPLEY *vs.* D. RUSSELL BROWN *et al.*

PROVIDENCE—APRIL 24, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Corporations.    Manufacturing Corporations.    Stockholders' Liability.*

A bill in equity was brought to enforce upon the defendants the penalty imposed by chapter 155 of the Public Statutes of 1882, as amended by chapter 1089, section 1, of 1892, corresponding to chapter 180 of the General Laws of 1896, upon the stockholders of manufacturing corporations which do not make the returns required of such corporations by the provisions of section 11 of that chapter. The charter of defendant created it a corporation for the purpose of holding real estate and personal property in connection therewith, "with all the powers and privileges and subject to all the duties and liabilities set forth in chapters 152 and 155 of the public statutes and any acts in amendment thereof or in addition thereto." By the terms of the charter it was required to have a place of business in the city of Providence. The corporation never made any returns:—

*Held,* that the words of the charter plainly meant that the corporation, though not a manufacturing company, should be subject to all the provisions which manufacturing companies were made subject to by chapter 155.

(2)  *Amendment of Charter.    Stockholders' Liability.*

*Held,* further, that, as the charter was subject to the subsequent amendments of chapter 155, the company was within the provisions of such chapter requiring corporations which had no manufactory established in any town in this state to file the return in the office of the town clerk of the town where an office of the corporation was located, which under the statute of constructions—Pub. Stat. cap. 26, § 8—was the office of the city clerk of the city of Providence.

(3)  *Stockholders' Liability.    Penalties.*

*Held,* further, that, the corporation having failed to file the certificate required by section 11, the stockholders became liable under the penalties provided by sections 12 and 13 of said chapter for all debts contracted by the company up to the commencement of the suit to an amount equal to the par value of their shares respectively.

BILL IN EQUITY to enforce stockholders' liability.

DOUGLAS, J. The complainants are judgment creditors of the Oakland Beach Association, a corporation created by act of the General Assembly, passed May, 1883. One of the defend-

ants is a stockholder in said corporation, and the other two are the administrator with the will annexed and the widow and residuary legatee of a deceased stockholder. Both alleged stockholders were such at the time when the complainants' debt accrued. The complainants' judgment was recorded July 7, 1902, and execution thereon has been returned *nulla bona.*

(1) The bill is brought to enforce upon the defendants the penalty imposed by chapter 155 of the Public Statutes of 1882, corresponding to chapter 180 of the General Laws of 1896, upon the stockholders of manufacturing corporations which do not make the returns required of such corporations by the provisions of section 11 of that chapter.

The defendants severally admit that the corporation never made such returns, but urge as a common defence that the provisions of said chapter are not applicable to it, notwithstanding the terms of its charter, inasmuch as it is not a manufacturing corporation and never had a manufactory established in any town in this State or elsewhere.

The charter created a corporation "for the purpose of acquiring and holding as an estate in fee simple the real estate situated in the town of Warwick and known as Oakland Beach, and other real estate adjacent thereto, and of purchasing and holding personal property of various kinds in connection therewith, and of establishing and maintaining a place of recreation and sojourn thereon, either by managing the same under their own direction, or by leasing the same to others, with full power to sell and convey said real estate or any portion thereof, so as to vest in the purchaser a good and sufficient title thereto in fee simple, and for the transaction of any other business connected therewith or incidental thereto, with all the powers and privileges and subject to all the duties and liabilities set forth in chapters 152 and 155 of the Public Statutes and in any acts in amendment thereof or in addition thereto."

Title XIX, of the Public Statutes, "Of corporations," contains chapter 152, "Provisions respecting corporations in general;" chapter 153, "Of banks and institutions for savings;" chapter 154, "Of returns of banks and institutions for savings;" chapter 155, "Of manufacturing corporations;" chap-

ter 156, "Of insurance companies;" chapter 157, "Of foreign insurance companies;" chapter 158, "Of railroad corporations;" chapter 159, "Of turnpike and toll-bridge corporations;" chapter 160, "Of voluntary associations;" chapter 161, "Of proprietors of common and undivided lands;" and chapter 162, "Of hospital corporations."

All these chapters, after the first, contain provisions which are applicable only to the classes of organizations to which their language refers, and which are absolutely meaningless if attempted to be applied to other classes. So that if, instead of chapter 155, the General Assembly had made this corporation subject to the provisions of chapter 153 or 158, the reference would at once be seen to be an error which could have no binding effect, as it could have no sensible meaning.

The same result will follow if we attempt to apply to this corporation the literal terms of chapter 155. Section 1 of that chapter relates to "the members of every incorporated manufacturing company." Section 2 refers to "such" company. Section 3 relates to "said" officers. Section 4 says every "such" company, and so do sections 5, 6, and 7. Section 8 begins, "In case any manufacturing company," etc. Section 11 reads: "Every manufacturing company included within the provisions of this chapter shall file returns," etc. Section 12: "If any of 'such' companies shall fail to do so," etc. Section 13: "The liability of members of an incorporated manufacturing company provided by sections 1 and 12 of this chapter, and of the members of such corporations," etc., "shall be limited," etc., and so on throughout the chapter. Some of the provisions of the chapter, as *e. g.*, those sections 11 and 12, do not apply to manufacturing corporations already established unless they accept the provisions of the same in the manner set forth in section 17; but, on the other hand, none of the provisions of the chapter in terms apply to any but manufacturing corporations, and by section 27 the provisions of the chapter are to apply to all manufacturing corporations thereafter created without exception. The argument is, in substance, that if, as must be admitted, the words of section 11, "Every manufacturing company included within the provis-

ions of this chapter," do not affect a manufacturing company unless it is included within the provisions of the chapter, so a company included by the terms of its charter in the provisions of the chapter is not subject to the provisions of section 11 unless it is a manufacturing company, and in like manner that no corporation but a manufacturing company can be subjected to the provisions of the chapter contained in other sections.

We think this argument magnifies the letter of the statute unduly, and ignores the obvious and natural meaning of the charter. The plaintiff cites many charters of business corporations which were not manufacturing companies in which the same provision was inserted. So many, indeed, that we cannot consider the reference to chapter 155 in this charter as accidental, since it was in accordance with a frequent practice of the legislature.

The words of the charter plainly mean that this corporation, though not a manufacturing company, shall be subject to all the provisions which manufacturing companies are made subject to by chapter 155—*i. e.*, by force of chapter 155 manufacturing corporations generally are subjected to certain provisions; by force of this charter this corporation is made subject to the same provisions.

This was the intent of the legislature, undoubtedly; but the question remains, how far is it possible to enforce it? If there are any provisions of chapter 155 which can be observed by a company chartered to deal in real estate, and having no right to establish a manufactory, such provisions are binding upon the company. If there are no such provisions, the reference to this chapter which attempts to impose them must remain inoperative, and the will of the legislature will have been frustrated through lack of proper words to express it. It is said in *Jones* v. *Dexter*, 8 Fla. 276, 288, after a review of many cases: "From the principles thus announced it is not difficult to deduce the rule that where a statute has been enacted with special reference to a particular subject, and by another statute its provisions are directed in general terms to be applied to another subject of an essentially different nature, the adopting statutes must be taken to mean that the provisions of the

original statute shall be restrained and limited to such only as are applicable and appropriate to the new subject."

(2)    For the purposes of this case it is necessary to inquire, first, as to the application of-section 11 of the statute, which, at the time the complainants' debt was contracted, had been amended by chapter 1089, section 1, of 1892, and in its amended form appears as section 11 of chapter 180 of the General Laws of 1896. If we substitute for the subject to which this section relates the name of this corporation, we can test the application of its provisions very easily. With this substitution the amended section reads as follows: "Every manufacturing company included within the provisions of this chapter [*The Oakland Beach Association*] shall file in the office of the town clerk of the town where the manufactory is established, and every manufacturing corporation included within the provisions of this chapter [*The Oakland Beach Association*] which has no manufactory established in any town in this state, shall file in the office of the town clerk of the town in this state where an office of the corporation is located, annually on or before the fifteenth day of February, a certificate signed by a majority of the directors truly stating the amount of its capital stock actually paid in, the value as last assessed for a town tax of its real estate, the value of its personal assets and the amount of its debts or liabilities on the thirty-first day of December, of the year next preceding."

It requires no latitude of construction to hold that the first sentence of this section to the word "and" is utterly without meaning, or effect as applied to the corporation. It cannot file the return in the town where its manufactory is established, for it has no manufactory and can have none in any town; but, these words being omitted, the rest of the section imposes a duty which this corporation can well perform. By the terms of its charter it is required to have a counting-room or place of business in the city of Providence; and so, under our statute of constructions—chapter 26, section 8—the return is directed to be filed in the office of the city clerk of the city of Providence.

It is argued by the defendants that the intent of the charter

must be inferred from the provisions of chapter 155 as it was when the charter was passed; but the words of the charter equally subject the corporation to the subsequent amendments of that chapter.  At the time this charter was passed manufacturing corporations which had no manufactories in this State could not comply with the provisions of section 11, as they could not file returns in a place which did not exist any more than this corporation could; and it is possible that it was to correct the omission with respect to both classes that the amendment was made.  We conclude, then, upon this point, that the charter of the Oakland Beach Association imposed upon the corporation the duty of making the returns prescribed in section 11.

(3)     The next question is whether the stockholders of this corporation are subject to the same penalty, in case the corporation does not make its required returns, that stockholders of manufacturing companies generally are subject to under sections 12 and 13 of the chapter.

These sections, which are identical in chapter 155 of the Public Statutes and chapter 180 of the General Laws, are as follows:

"Sec. 12.   If any of such companies shall fail to do so all the stockholders of such company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such notice shall be given, except as hereinbefore provided, unless such company shall have become insolvent and assigned its property in trust for the benefit of its creditors, in which case the obligation to give such notice by the filing of such ·certificate shall cease.

"Sec. 13.   The liability of members of an incorporated manufacturing company provided by sections one and twelve of this chapter and of the members of such corporations under other statutory provisions, for the debts of such company hereafter contracted or for obligations hereafter incurred, shall be and hereby is limited to the shares of such members in such corporation paid up to the par value thereof; and if the corporation shall fail to file the certificate provided to be filed under the provisions of section eleven of this chapter, such members shall be

liable for said debts and obligations in an additional amount up to 'but not exceeding the said par value of their said shares.''

It is very true that this section is penal in character, as we have repeatedly held. *Sayles* v. *Bates*, 15 R. I. 342; *Wing* v. *Slater*, 19 R. I. 597; *Kilton, Warren & Co.* v. *Providence Tool Co.*, 22 R. I. 605, 613, and as similar statutes have been held in other States and by the United States Courts. *Merchants' Bank* v. *Bliss*, 35 N. Y. 412; *Chase* v. *Lord*, 77 N. Y. 1; *Bruce* v. *Platt*, 80 N. Y. 379; *Steam Engine Co.* v. *Hubbard*, 101 U. S. 188; *Chase* v. *Curtis*, 113 U. S. 452; *Sayles* v. *Brown*, 40 Fed. Rep. 8; *Gray* v. *Coffin*, 9 Cush. 192; *Dane* v. *Dane Mfg. Co.*, 14 Gray, 489; *Coffin* v. *Rich*, 45 Me. 507; *Libby* v. *Tobey*, 82 Me. 397; *Moyer* v. *Pa. Slate Co.*, 71 Pa. St. 293; *Mean's Appeal*, 85 Pa. St. 75.

But there is no room for construction in the clauses relating to the present case.

The corporation has failed to file the certificate required by section 11, and it follows that the stockholders became jointly and severally liable for all the debts of the company existing when the certificate was required to be filed and all debts contracted by the company until such certificate was filed, or, inasmuch as no certificate was ever filed, for all debts contracted by the company up to the commencement of this suit, and the liability of each stockholder for this neglect is limited by section 13 to an amount equal to the par value of his shares.

The contention of the defendants is that not only this statute should be construed strictly, but that the charter of the corporation should also be given the strictest construction. It is not the plain meaning of the general statute that they dispute, but the inclusion of the members of this corporation in its provisions.

We cannot assent to this proposition. A charter is a legislative grant, and in case of doubt it to be construed most strongly against the grantee, not against the State. It is to be observed also that the grant is not to a corporate body but to individuals who are named in the act, and their successors, who are the stockholders in the corporate body which they constitute. So

long as the corporation observes certain conditions which are imposed by reference to general statutes, these stockholders may shield themselves under the corporate character and name. When they in their corporate character fail to fulfill these duties they may be pursued again as individuals.

In the present case the references to the chapters of the statutes confer upon the corporators powers and privileges as well as liabilities. The grant of corporate powers is coupled with the imposition of liabilities, and the grantees take the former on condition that they will sustain the latter. There can be no doubt that the legislature intended to incorporate into the charter of this company such provisions of chapter 152 as were applicable, and we have no doubt that such was the intention also with reference to the provisions of chapter 155 and the amendments to it which are applicable.

The provisions of chapter 152 were mostly grants of privileges, and those of chapter 155 restrictions or regulations; but the corporators who accept this charter cannot take it with the privileges and reject the regulations. If the duty of making returns is imposed upon the corporation it follows that the default of the corporation in that regard must impose the liability specified upon the stockholders.

The defendants cite the case of *Park Bank* v. *Remsen*, 158 U. S. 337, as holding that a special charter, which provided that the corporation thereby created should "possess all the general powers and privileges and be subject to all the liabilities" conferred and imposed upon corporations organized under a general statute, did not subject the trustees of such corporation to a penalty imposed by the general statute for default in making returns. The case is distinguishable from this in that it concerned officers and not stockholders of the corporation, and by the more cogent fact that the charter itself defined the liabilities of the stockholders. Mr. Justice Brewer, who delivered the opinion, says, p. 346: "Section 9 of the charter of the Warehouse Company makes special provision for the liabilities of the stockholders of the company which was obviously unnecessary if by the clause quoted all the provisions of the general incorporation act in respect to the liability of stockholders,

trustees, and other officers were transferred to and made a part of the charter.

While these considerations prevent the direct application of the decision in this case, it must be acknowledged that the reasoning of the opinion supports the views urged by the defendants. It proceeds substantially in this wise: The general statute referred to is penal in its nature, and must be construed strictly. Hence the word *corporation*—not in the statute but in the charter—must be deprived of its natural sense, which includes its officers and stockholders, and limited to its barest literal meaning. The argument seems to us fallacious, and, notwithstanding its high authority, we cannot hold that when the charter of the Oakland Beach Association subjects the corporation to liabilities it leaves the stockholders unaffected, particularly as the only conceivable motive in mentioning chapter 155 was to adopt its system of returns and penalties.

We think the words in the charter are of equal inclusion with the equivalent words in the last section of chapter 180, viz.: "All manufacturing corporations hereafter created shall be subject to the provisions of this chapter." Could anyone read these words as meaning that such corporations should not be subject to the provisions of the chapter which affect stockholders? We think not. But the only intelligible reading of this charter, as we have seen, makes this corporation by name subject to the same provisions that the other corporations are subjected to by description. There is no hardship in this interpretation. The stockholders control the corporation. The officers must make the returns if the stockholders direct them to do so; and if they disobey such instruction the statute provides that the stockholders may avoid the personal liability by filing their own certificate.

In this case they also neglected this precaution, and we must hold them liable.

It is further urged on behalf of Harriet A. Wellman that the bill sets forth no cause of action against her, as she is residuary legatee under the will of Harvey D. Wellman, deceased, and has never been otherwise connected with the Oakland Beach Association. We think this position is well taken.

The whole of the estate of the testator is liable to be used by his administrator with the will annexed for the payment of his debts, and the residuary legatee has no interest in the estate which can prevent such an application of it. The administrator is a party, and through him the complainants can secure all their rights in the premises. They have no claim at present upon the residuary legatee. The bill as to her must be dismissed.

*Walter B. Vincent,* for complainants.

*Comstock & Gardner and Dexter B. Potter,* for respondents.